# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
May 28, 2015 Session

## IN RE CARRINGTON H. ET AL.

**Appeal by Permission from the Court of Appeals, Middle Section**
**Appeal from the Juvenile Court for Maury County**
**Nos. 90576, 90577      George L. Lovell, Judge**

_____

**No. M2014-00453-SC-R11-PT – Filed January 29, 2016**
_____

SHARON G. LEE, C.J., with whom GARY R. WADE, J., joins, concurring in part and dissenting in part.

The Court has decided that an indigent parent has the right to assistance of counsel—but not the right to *effective* assistance of counsel—in a parental termination proceeding. I believe that the vast majority of lawyers provide competent representation as required by our Rules of Professional Conduct. *See* Tenn. Sup. Ct. R. 8, RPCs 1.1 & 1.3. But in those rare situations where a lawyer makes a mistake or fails to do his or her duty to such an extent that the termination proceeding is not fundamentally fair, I favor providing the parent with an opportunity to seek relief. In my view, providing counsel for an indigent parent but not requiring counsel to render effective representation is an empty gesture.

As noted by the Court, there are numerous procedural safeguards in place to protect a parent's right to the continued care and custody of her child, including the requirement that the State prove by clear and convincing evidence at least one statutory ground for termination and that termination is in the child's best interest. I concur with the Court's decision to add another procedural safeguard by requiring the Court of Appeals to review the trial court's findings on all grounds for termination and whether termination is in the child's best interest, even if a parent does not challenge these findings on appeal. But these safeguards, as appropriate and well-meaning as they are, cannot protect a parent's rights when her lawyer is ill-prepared, fails to make an adequate pretrial investigation, fails to call a necessary witness to testify, fails to advance appropriate legal arguments, or fails to otherwise adequately represent her. I agree with the Court that termination proceedings must be fundamentally fair. But how can we assure the fairness of a proceeding without requiring the parent's lawyer to be effective? I do not think we can.

Most states require appointed counsel in termination proceedings to render effective assistance. In a proceeding that may result in the permanent severance of the parental bond, the stakes are high; the effects of a wrong decision are irrevocable and can cause lasting damage to the parent and the child. In these cases, we cannot expect counsel to be perfect, but we can require them to be adequate.

A natural parent's "'desire for and right to the companionship, care, custody, and management of his or her children' is an interest far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758 (1982) (quoting *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27 (1981)) (internal quotation marks omitted). A proceeding to terminate a parent's rights does more than infringe on a parent's fundamental liberty interest; it seeks to forever end it. *Id.* at 758. An order of termination severs "forever all legal rights and obligations of the parent." Tenn. Code Ann. § 36-1-113(l)(1) (Supp. 2015). A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore, "a commanding one." *Lassiter*, 452 U.S. at 27.

Granted, not all parents are good. Some parents are bad and harm their children. The mother in this case was certainly not a model parent. But the fundamental liberty interest of parents in the care of their children does not "evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." *Santosky*, 455 U.S. at 753. When the State intervenes to terminate the parent-child relationship, the process must meet Fourteenth Amendment due process standards and provide a proceeding that is fundamentally fair. *Lassiter*, 452 U.S. at 37; *see also Santosky*, 455 U.S. at 753-54; *Little v. Streater*, 452 U.S. 1, 13 (1981). As the United States Supreme Court noted in *Santosky*, "parents retain a vital interest in preventing the irretrievable destruction of their family life." 455 U.S. at 753.

In Tennessee, indigent parents are entitled to appointed counsel by statute and court rule. *See* Tenn. Code Ann. § 37-1-126(a)(2)(B) (Supp. 2012); Tenn. Sup. Ct. R. 13, § 1(c), (d)(2)(B); Tenn. R. Juv. P. 39(e)(2). Almost all states provide indigent parents with appointed counsel in parental termination cases based on statute, constitutional provision, or court rule. *See* Susan Calkins, *Ineffective Assistance of Counsel in Parental-Rights Termination Cases: The Challenge for Appellate Courts*, 6 J. App. Prac. & Process 179, 193 (2004).

To make the right to counsel meaningful, most states have recognized that the right to counsel in parental termination cases includes the right to effective assistance of counsel.[1] Calkins, *supra*, at 199. As many jurisdictions have observed, a right to counsel

---

[1] *See, e.g.*, *S.C.D. v. Etowah Cnty. Dep't of Human Res.*, 841 So. 2d 277, 279 (Ala. Civ. App. 2002) (quoting *Crews v. Houston Cnty. Dep't of Pensions & Sec.*, 358 So.2d 451, 455 (Ala. Civ. App. 1978)); *Chloe W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 336 P.3d 1258, 1265 (Alaska 2014); *Jones v. Ark. Dep't of Human Servs.*, 205 S.W.3d 778, 794 (Ark. 2005); *In re Darlice C.*, 129 Cal. Rptr. 2d 472, 475 (Cal. Ct. App. 2003); *People ex rel. C.H.*, 166 P.3d 288, 290 (Colo. App.

has little value unless we hold counsel's performance to some standard of effectiveness. *See, e.g.*, *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003) ("[I]t would seem a useless gesture on the one hand to recognize the importance of counsel in termination proceedings [as provided by statute], and, on the other hand, not require that counsel perform effectively."); *In re E.H.*, 880 P.2d 11, 13 (Utah Ct. App. 1994) (holding that Utah's statutory right to counsel would be meaningless or illusory without an effectiveness requirement); *see also In re Stephen*, 514 N.E.2d 1087, 1090-91 (Mass. 1987) (recognizing that a right to counsel is of little value without an expectation of effectiveness); *In re Trowbridge*, 401 N.W.2d 65, 66 (Mich. Ct. App. 1986) ("It is axiomatic that the right to counsel includes the right to competent counsel."); *In re Termination of Parental Rights of James W.H.*, 849 P.2d 1079, 1080 (N.M. Ct. App. 1993) ("Representation by counsel means more than just having a warm body with 'J.D.' credentials sitting next to you during the proceedings.").

In declining to recognize a right to effective representation, the Court distinguishes between a constitutional and a statutory right to counsel, noting that unless there is a right to counsel under the United States Constitution, there is no constitutional right to effective assistance. *See Pennsylvania v. Finley*, 481 U.S. 551, 554-55 (1987); *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982); *Ross v. Moffitt*, 417 U.S. 600, 610 (1974). This is a distinction without a difference in this case because, under the United States Supreme Court's decision in *Lassiter*, the mother in this case has a constitutional right to counsel.

In *Lassiter*, the United States Supreme Court identified a three-factor test for determining, on a case-by-case basis, whether the appointment of counsel is constitutionally required. 452 U.S. at 27-31. Factors to be considered are the parent's

2007); *State v. Anonymous*, 425 A.2d 939, 943 (Conn. 1979); *In re R.E.S.*, 978 A.2d 182, 189 (D.C. 2009); *J.B. v. Fla. Dep't of Children and Families*, 170 So. 3d 780, 790 (Fla. 2015); *In re A.R.A.S.*, 629 S.E.2d 822, 825 (Ga. Ct. App. 2006); *In re RGB*, 229 P.3d 1066, 1090 (Haw. 2010); *In re M.F.*, 762 N.E.2d 701, 709 (Ill. App. Ct. 2002); *In re A.R.S.*, 480 N.W.2d 888, 891 (Iowa 1992) (citing *In re D.W.*, 385 N.W.2d 570, 579 (Iowa 1986)); *In re Rushing*, 684 P.2d 445, 448-49 (Kan. Ct. App. 1984); *In re Adoption/Guardianship of Chaden M.*, 30 A.3d 935, 942 (Md. 2011); *In re Adoption of Azziza*, 931 N.E.2d 472, 477 (Mass. App. Ct. 2010) (citing *In re Stephen*, 514 N.E.2d 1087, 1090-91 (Mass. 1987)); *In re Trowbridge*, 401 N.W.2d 65, 66 (Mich. Ct. App. 1986); *In re J.C., Jr.*, 781 S.W.2d 226, 228 (Mo. Ct. App. 1989); *In re A.S.*, 87 P.3d 408, 412-13 (Mont. 2004); *N.J. Div. of Youth & Family Servs. v. B.R.*, 929 A.2d 1034, 1037 (N.J. 2007); *State ex rel. Children, Youth & Families Dep't v. Tammy S.*, 974 P.2d 158, 162 (N.M. Ct. App. 1998); *In re Elijah D.*, 902 N.Y.S.2d 736, 736 (N.Y. App. Div. 2010); *In re S.C.R.*, 679 S.E.2d 905, 909 (N.C. Ct. App. 2009); *In re K.L.*, 751 N.W.2d 677, 685 (N.D. 2008); *In re Wingo*, 758 N.E.2d 780, 791 (Ohio Ct. App. 2001); *In re D.D.F.*, 801 P.2d 703, 707 (Okla. 1990); *State ex rel. Juvenile Dep't v. Geist*, 796 P.2d 1193, 1200 (Or. 1990); *In re Adoption of T.M.F.*, 573 A.2d 1035, 1040 (Pa. Super. Ct. 1990); *In re Bryce T.*, 764 A.2d 718, 722 (R.I. 2001); *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003); *In re E.H.*, 880 P.2d 11, 13 (Utah Ct. App. 1994); *In re Moseley,* 660 P.2d 315, 318 (Wash. Ct. App. 1983); *In re M.D.(S.)*, 485 N.W.2d 52, 55 (Wis. 1992). *But see, e.g.*, *In re Azia B.*, 626 N.W.2d 602, 612 (Neb. Ct. App. 2001) (declining to recognize a claim of ineffective assistance for parental termination cases).

interest; the State's interest in the child's welfare and the need for an economic and efficient procedure; and the risk of an erroneous decision if counsel is not appointed. *See id.; State ex rel. T.H. v. Min*, 802 S.W.2d 625, 626 (Tenn. Ct. App. 1990). A parent's interest in the accuracy and fairness of the proceeding that will forever irrevocably end her relationship with her child is, as noted by the United States Supreme Court, a "commanding one." *Lassiter*, 452 U.S. at 27. The State has a strong interest in the welfare of the child and the correctness of the decision. *Id.* at 27-28. The State also has an interest in assuring that the proceeding is handled efficiently and economically. *Id.* at 28. The State pays the attorney fees and expenses for appointed counsel. *See* Tenn. Code Ann. § 37-1-126(a)(3). Given that the State is footing the bill, shouldn't the State expect—even demand—that appointed counsel render effective assistance? I believe it should. The third factor—the risk of an erroneous decision—often becomes the tie-breaker in whether counsel is constitutionally required. *See Min*, 802 S.W.2d at 626-27. In *Min*, the Tennessee Court of Appeals, relying on *Lassiter*, listed several factors to consider in determining whether failing to appoint counsel is likely to produce an erroneous decision. *Id.* at 627. These factors are (1) whether expert medical and/or psychiatric testimony is presented; (2) whether the parents have had uncommon difficulty in dealing with life and life situations; (3) whether the parents are thrust into a distressing and disorienting situation at the hearing; (4) the difficulty and complexity of the issues and procedures; (5) the possibility of criminal self-incrimination; (6) the educational background of the parents; and (7) the permanency of potential deprivation of the child. *Id.* (citing *Lassiter*, 452 U.S. at 29-33; *Davis v. Page*, 714 F.2d 512, 516-17 (5th Cir. 1983)).

Based on these factors, the mother in this case was constitutionally entitled to the appointment of counsel. In applying the *Min* factors, (1) the State presented expert testimony to support its case, making representation by counsel important for the mother to effectively question the veracity of that testimony; (2) the mother had uncommon difficulty in dealing with life and life situations, having a long history of family problems, drug dependency and abuse, and mental illness; (3) the issues and procedures involved in the termination hearing were difficult and complex, particularly given the State's allegation of the mother's mental incompetency and introducing expert medical testimony; (4) the parental termination hearing would have likely been a distressing and disorienting situation for the mother; and (5) an order terminating the mother's parental rights would have been permanent and irrevocable. In its brief, the State presumes that the mother "would meet the [*Lassiter*] balancing test . . . for assistance of counsel, and likely therefore, for effective assistance of counsel in this termination proceeding." I agree.

As the State concedes, "[i]t is generally accepted that where the *Lassiter* . . . due[]process analysis establishes a federal constitutional right to counsel, due process also entitles the parent to have a right to effective counsel." *See also* Calkins, *supra*, at 196 (noting that "presumably there is a federal constitutional right to effective assistance

-4-

of counsel in every case in which a *Lassiter* analysis finds a right to counsel"). Even if this Court does not recognize the right to effective assistance of counsel in all parental termination cases, the mother in this case is constitutionally entitled to the appointment of counsel under *Lassiter* and, therefore, effective assistance of counsel.

The Court likens the statutory right to counsel in parental termination proceedings to the statutory right to counsel in post-conviction cases, which does not include a right to effective assistance. *See Frazier v. State*, 303 S.W.3d 674, 680 (Tenn. 2010). The litigants, however, in these proceedings are on different footing. A petitioner pursuing a petition for post-conviction relief has already been tried and convicted, most likely received at least one tier of appellate review, and otherwise afforded the full panoply of procedural protections required by the Tennessee and United States Constitutions. The post-conviction petitioner initiated the action, and if he loses, his position remains essentially the same. *Id.* at 682 (noting that "a post-conviction petitioner does not stand in the same shoes as the criminally accused" and the provision of counsel is "not to protect them from the prosecutorial forces of the State, but to shape their complaints into the proper legal form and to present those complaints to the court"). A parent in a termination proceeding is more akin to a defendant in the trial stage of a criminal proceeding. The parent did not initiate the proceeding and has much to lose if the court renders an adverse decision. No decision has been made by a fact finder, and it is the parent's first opportunity to defend herself in court against charges brought by the State, which could forever sever the relationship with her child.

I share the Court's concern that the opportunity for repeated re-examination of a parental termination judgment through ineffectiveness claims can inflict immeasurable damage upon children and that achieving finality is imperative. A parent should not be able to repeatedly challenge the judgment terminating her parental rights. However, the interest in finality should not trump a parent's interest in maintaining the parental bond and in the correctness of the decision to terminate parental rights. Recognizing a right to effective assistance of counsel will not unduly compromise a child's interest in finality, permanency, and safety. I would recommend referring this issue to the Tennessee Advisory Commission on the Rules of Practice and Procedure to formulate a process for a parent to assert a claim for ineffective assistance of counsel. I would encourage the Commission to study the post-trial motion procedure adopted by the Florida Supreme Court in *J.B. v. Florida Department of Children and Families*, 170 So. 3d 780 (Fla. 2015), and the procedures in other states that allow motions to be filed in the appellate court for review, *see, e.g.*, *People ex rel. C.H.*, 166 P.3d 288 (Colo. App. 2007); *N.J. Div. of Youth & Family Servs. v. B.R.*, 929 A.2d 1034 (N.J. 2007); *State ex rel. Juvenile Dep't v. Geist*, 796 P.2d 1193 (Or. 1990).

Upon review of the record before us, I cannot disagree with the Court's decision that the mother was not deprived of a fundamentally fair parental termination proceeding.

I regret that the mother did not have the opportunity to present any proof or evidence to support her claims of ineffectiveness.

In conclusion, Tennessee should join the majority of states and recognize that a parent has the right to effective assistance of counsel in a termination proceeding. This is a necessary step to ensure that proceedings with the effect of severing the bond between parent and child are fundamentally fair.

_____
SHARON G. LEE, CHIEF JUSTICE